**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NINA OWENS,

               Plaintiff,

v.

PRICEWATERHOUSECOOPERS LLC,
PRICEWATERHOUSECOOPERS
ADVISORY SERVICES LLC, PWC USA
LLP, PWC US GROUP
LLP, and PWC US CONSULTING LLP,

               Defendants.

Case No.: 1:24-cv-05517-GHW

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

# <u>TABLE OF CONTENTS</u>

**Page**

I.   THE COURT SHOULD USE THE PLAUSIBILITY STANDARD TO DECIDE IF THIS
     CASE RELATES TO A SEXUAL HARASSMENT DISPUTE. ....................................... 1

II.  EFASASHA DOES NOT APPLY TO THIS PURPORTED GENDER
     DISCRIMINATION CASE BECAUSE IT DOES NOT RELATE TO SEXUAL
     HARASSMENT................................................................................................................ 3

     A.   EFASASHA Does Not Cover All Gender Discrimination Disputes, Just Sexual
          Harassment Disputes............................................................................................. 3

     B.   Sexual Harassment Is a Distinct Subcategory of Gender Discrimination Under the
          NYCHRL. .............................................................................................................. 5

     C.   Owens Did Not Plead Plausible, Gender-Based Harassment. ............................... 7

     D.   Owens's Retaliation Claim Is Beyond EFASASHA's Scope Too........................... 9

III. THE COURT CAN DETERMINE PWC DID NOT EMPLOY OWENS........................11

     A.   The Summary Judgment Standard Governs the Determination of the Parties'
          Relationship in this Context..................................................................................11

     B.   The Undisputed Facts Demonstrate that PwC Did Not Employ Owens. ............. 12

     C.   Owens's Declaration Creates No Genuine Issues of Material Fact. ..................... 14

IV.  CONCLUSION................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Possible Prods., Inc.*,
   336 F. Supp. 3d 187 (S.D.N.Y. 2018).....................................................................................11

*Baskett v. Autonomous Rsch. LLP*,
   No. 17-CV-9237 (VSB), 2018 WL 4757962 (S.D.N.Y. Sept. 28, 2018) .............................12

*Blige v. City of N.Y.*,
   No. 15 Civ. 08873 (GBD) (KHP), 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017)..................9

*Blige v. City Univ. of N. Y.*,
   No. 1:15-cv-08873 (GBD) (KHP), 2017 WL 498580 (S.D.N.Y. Jan. 19, 2017) ....................9

*Bostock v. Clayton Cnty., Ga.*,
   590 U.S. 644 (2020).................................................................................................................5

*Bowling v. Stamford Anesthesiology Servs., P.C.*,
   No. 3:17-CV-642(AWT), 2020 WL 4938185 (D. Conn. Aug. 24, 2020) ..............................14

*Brazzano v. Thompson Hine LLP et al.*,
   No. 24-CV-01420 (ALC)(KHP), 2025 WL 963114 (S.D.N.Y. Mar. 31, 2025)......................7

*Campbell v. Chadbourne & Parke LLP*,
   No. 16-CV-6832 (JPO), 2017 WL 2589389 (S.D.N.Y. June 14, 2017) ..........................12, 14

*Castagna v. Luceno*,
   558 F. App'x 19 (2d Cir. 2014) ...............................................................................................9

*Cornelius v. CVS Pharmacy, Inc.*,
   No. Civ. Action No. 23-01858 (SDW) (AME), 2023 WL 6876925 (D.N.J. Oct. 18,
   2023) ........................................................................................................................................4

*Delo v. Paul Taylor Dance Found., Inc.*,
   685 F. Supp. 3d 173 (S.D.N.Y. 2023)...................................................................................1, 7

*Diaz-Roa v. Hermes Law, P.C.*,
   No. 24-CV-2105 (LJL), 2024 WL 4866450 (S.D.N.Y. Nov. 21, 2024)...........................2, 5, 7

*Ding v. Structure Therapeutics, Inc.*,
   No. 24-CV-01368-JSC, 2025 WL 405699 (N.D. Cal. Feb. 5, 2025) .......................................6

*Dixon v. Dollar Tree Stores, Inc.*,
   No. 22-CV-131S, 2023 WL 2388504 (W.D.N.Y. Mar. 7, 2023) .............................................4

*E.E.O.C. v. Sidley Austin Brown & Wood*,
   315 F.3d 696 (7th Cir. 2002) ...................................................................14

*Faith v. Khosrowshahi*,
   No. 21-CV-06913 (JMA) (JMW), 2023 WL 5278126 (E.D.N.Y. Aug. 16, 2023) ..................4

*Forrest v. Jewish Guild for the Blind*,
   3 N.Y.3d 295 (N.Y. 2004) ...................................................................11

*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010)...................................................................9

*Int'l Techs. Mktg. v. Verint Sys.*,
   991 F.3d 361 (2d Cir. 2021)...................................................................2

*Mann v. Est. of Meyers*,
   61 F. Supp. 3d 508 (D.N.J. 2014) ...................................................................14

*Mejia v. White Plains Self Storage Corp.*,
   No. 18-CV-12189 (KMK), 2020 WL 247995 (S.D.N.Y. Jan. 16, 2020) ..................9

*Mitura v. Finco Servs., Inc.*,
   712 F. Supp. 3d 442 (S.D.N.Y. 2024)...................................................................7

*Moore v. Hadestown Broadway Ltd. Liab. Co.*,
   722 F. Supp. 3d 229 (S.D.N.Y. 2024)...................................................................10, 11

*Moulds v. Skillcycle, Inc.*,
   Civil Action No. 23-4873, 2024 WL 2206464 (E.D. Pa. Mar. 27, 2024)...................4

*Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*,
   746 F. Supp. 3d 135 (S.D.N.Y. 2024)...................................................................1

*Olivieri v. Stifel, Nicolaus & Co., Inc.*,
   112 F.4th 74, 92 (2d Cir. 2024) ...................................................................10

*Rosenblatt v. Bivona & Cohen, P.C.*,
   969 F. Supp. 207 (S.D.N.Y. 1997) ...................................................................14

*Simms v. Ctr. for Corr. Health & Pol'y Stud.*,
   794 F. Supp. 2d 173 (D.D.C. 2011) ...................................................................14

*Simpson v. Ernst & Young*,
   100 F.3d 436 (6th Cir. 1996) ...................................................................14

*Singh v. Meetup LLC*,
   No. 23-CV-9502 (JPO), 2024 WL 3904799 (S.D.N.Y. Aug. 22, 2024) ..................4, 5, 6

*Singh v. Meetup LLC*,
    No. 23-CV-9502 (JPO), 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024)..................................4

*Smith v. Castaways Fam. Diner*,
    453 F.3d 971 (7th Cir. 2006) ......................................................................................14

*Stern v. Leucadia Nat. Corp.*,
    844 F.2d 997 (2d Cir. 1988)..........................................................................................2

*Sutter v. DiBello*,
    No. 18 Civ. 817 (ADS) (AKT), 2019 WL 4195303 (E.D.N.Y. Aug. 12, 2019) .................8, 9

*Van De Hey v. Epam Syst. Inc.*,
    No. 24-CV-08800-RFL, 2025 WL 829604 (N.D. Cal. Feb. 28, 2025).................................1, 2

*Watson v. Blaze Media LLC.*,
    3:23-CV-0279-B, 2023 WL 5004144 (N.D. Tex. Aug. 3, 2023) ......................................12

*Williams v. N.Y.C. Hous. Auth.*,
    61 A.D.3d 62 (1st Dep't 2009) ......................................................................................5

*Yost v. Everyrealm, Inc.*,
    657 F. Supp. 3d 563 (S.D.N.Y. 2023)..............................................................................1, 2

**STATUTES**

9 U.S.C. § 401(4) .........................................................................................................10

9 U.S.C. § 402(a) .....................................................................................................4, 6, 10

9 U.S. Code § 4 ...........................................................................................................15

**RULES**

FED. R. CIV. P. 11...........................................................................................................2

FED. R. CIV. P. 12(b)(6) ...............................................................................................1, 2

As established in PwC's moving brief,[1] the Court should grant PwC's motion to compel arbitration because Owens did not and could not (as a former PwC owner) plead a plausible sexual harassment claim subject to EFASASHA.

The P&PAs contain valid arbitration provisions, governed by the FAA, that cover the claims Owens asserts in this case. The only issue is whether Owens can utilize EFASASHA to avoid her agreement to arbitrate by merely alleging a non-sanctionable claim of gender discrimination or, instead, whether she must plausibly allege a claim of sexual harassment. The plain language of the statute, relevant legislative history, and overwhelming weight of authority require the latter. And Owens alleges nothing of the sort. The Court should grant PwC's motion so the parties can litigate their dispute in the forum to which they mutually agreed.

## I.   THE COURT SHOULD USE THE PLAUSIBILITY STANDARD TO DECIDE IF THIS CASE RELATES TO A SEXUAL HARASSMENT DISPUTE.

Owens argues she can avoid arbitration merely by alleging an implausible claim of gender discrimination that is not so frivolous as to be sanctionable. That approach is inconsistent with the great majority of authority and plain language of the statute and should be rejected.

With one exception, courts in this Circuit have uniformly followed *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563 (S.D.N.Y. 2023), and applied Rule 12(b)(6)'s plausibility standard in EFASASHA cases. *See* Mov. at 12 (collecting cases). Courts have characterized *Yost* as "persuasive." *See, e.g.*, *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, 746 F. Supp. 3d 135, 150 n.5 (S.D.N.Y. 2024); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 180 (S.D.N.Y. 2023); *see also Van De Hey v. Epam Syst. Inc.*, No. 24-CV-08800-RFL, 2025 WL 829604, at *3 (N.D. Cal. Feb. 28, 2025).

---

[1] All terms used but not defined herein shall have the meanings ascribed to them in PwC's moving brief. *See* ECF No. 44 ("Mov.").

This growing consensus rests on EFASASHA's plain language. Congress used the word "alleged" deliberately. It invokes plausibility, which is "as familiar a standard as any used in modern case law." *Yost*, 657 F. Supp. 3d at 585. Courts, including the Second Circuit, have previously construed the word "allege" in other statutes to incorporate the plausibility standard. *Yost*, 657 F. Supp. at 587 (collecting cases). Additionally, in defining a "sexual harassment dispute" by reference to conduct alleged to constitute a violation of laws proscribing sexual harassment, "[i]t would have been well-known to Congress that federal courts use the plausibility standard to measure viable claims under Rule 12(b)(6)." *Id.*

In pressing for a standard that would allow her to escape arbitration by merely asserting non-sanctionable claims, Owens relies exclusively on dicta in *Diaz-Roa v. Hermes Law, P.C.*, No. 24-CV-2105 (LJL), 2024 WL 4866450 (S.D.N.Y. Nov. 21, 2024). The sexual harassment allegations in *Diaz-Roa* met *Yost*'s plausibility standard and the Court's musing suggesting a different review standard was unnecessary to its holding and thus dicta (in addition, of course, to being at most persuasive to rather than binding on this Court). *Id.* at *29-34.

As explained above, there is no language in EFASASHA supporting a different review standard. In addition, there is no persuasive policy reason for one either. In fact, the *Diaz-Roa* standard invites gamesmanship and waste of resources. Plaintiffs hoping to avoid arbitrating otherwise arbitrable claims could conjure implausible claims of sexual harassment that avoid Rule 11 sanctions[2] but ultimately would be dismissed in a (redundant) second round of briefing concerning the sufficiency of the complaint. *See Epam Systems*, 2025 WL 829604, at *3 (applying *Yost* over *Diaz-Roa*).

---

[2] Determining something is "frivolous" and requires sanctions is not something courts take lightly. Indeed, "separating frivolous claims from mere zealous advocacy . . . [is] difficult," *Int'l Techs. Mktg. v. Verint Sys.*, 991 F.3d 361, 368 (2d Cir. 2021), and courts err against awarding sanctions "absent *patently inadequate* claims or unreasonable contentions," *Stern v. Leucadia Nat. Corp.*, 844 F.2d 997, 1006 (2d Cir. 1988) (emphasis added).

EFASASHA's text and purpose and the great weight of the case law support application of the plausibility standard. The Court should apply it here, hold that Owens failed to plead a plausible sexual harassment claim, and grant PwC's motion.

## II.    EFASASHA DOES NOT APPLY TO THIS PURPORTED GENDER DISCRIMINATION CASE BECAUSE IT DOES NOT RELATE TO SEXUAL HARASSMENT.

To invoke EFASASHA's option and enable her to avoid her agreed forum for dispute resolution, Owens's case must relate to a plausibly pleaded sexual assault or sexual harassment dispute. It does not, and her allegations of purported gender discrimination are no stand-in for EFASASHA's express requirements. Nor is her argument saved by reference to her retaliation claim, which is also based on an internal report of, *at most*, alleged gender discrimination.

### A.    EFASASHA Does Not Cover All Gender Discrimination Disputes, Just Sexual Harassment Disputes.

A review of legislative history proves that Congress intentionally rejected any proposal to exempt gender discrimination from arbitration. When EFASASHA's sponsors proposed earlier legislation that would have made pre-dispute arbitration agreements invalid and unenforceable if they "require[d] arbitration of a sex discrimination dispute," S. 2203, 115th Cong. § 2 (2017); H.R. 4570, 115th Cong. § 2 (2017), *the bill did not pass*. When the sponsors reintroduced legislation using the same definitions two years later, *that legislation did not pass either*. H.R. 1443, 116th Cong. § 2 (2019).[3]

Only the narrower approach protecting access to courts for sexual assault and sexual harassment survivors succeeded in passing. In bringing that bill to pass, Senator Joni Ernst said:

---

[3] Ten years earlier, Congress enacted legislation (known as the Franken Amendment) precluding the Department of Defense from awarding contracts to contractors that use mandatory arbitration agreements for, *inter alia*, "sexual assault or harassment" disputes *and* "any claim under Title VII of the Civil Rights Act." Pub. L. No. 111-118, § 8116, 123 Stat. 3409, 3454-55 (2009). EFASASHA's narrower scope further reflects Congress's deliberate decision *not* to cover a broader range of employment disputes.

> [t]he language of this bill should be *narrowly interpreted*. . . . I care very much and support survivors of sexual harassment or assault having access to the appropriate process to ensure swift justice, but it is also very important to me that *those claims stand separate from any other kind of claim*. . . . This bill is *narrow and scoped to address sexual assault and sexual harassment cases*.

168 CONG. REC. S625, S627 (daily ed. Feb. 10, 2022) (emphases added). Likewise, Senator Richard Durbin said that "there is more we can do to support survivors of *sexual misconduct*. . . . [F]orced arbitration clauses have enabled *sexual abusers* to escape scrutiny while their victims are compelled to stay silent." *Id.* at S626 (emphases added). Accordingly, the final bill limited the option to plaintiffs "alleging conduct constituting a *sexual assault dispute or sexual harassment dispute*." 9 U.S.C. § 402(a) (emphasis added).

Against that backdrop, courts have concluded that "Congress did *not* intend [EFASASHA's] carveout for 'sexual harassment' claims to encompass all sex discrimination claims." *Singh v. Meetup LLC*, No. 23-CV-9502 (JPO), 2024 WL 4635482, at *1 (S.D.N.Y. Oct. 31, 2024) ("*Singh II*") (emphasis added); *accord Singh v. Meetup LLC*, No. 23-CV-9502 (JPO), 2024 WL 3904799, at *4-7 (S.D.N.Y. Aug. 22, 2024) ("*Singh I*") (rejecting argument that gender discrimination claims qualified for EFASASHA's exemption from arbitration); *Faith v. Khosrowshahi*, No. 21-CV-06913 (JMA) (JMW), 2023 WL 5278126, at *7 n.5 (E.D.N.Y. Aug. 16, 2023) (same); *Dixon v. Dollar Tree Stores, Inc.*, No. 22-CV-131S, 2023 WL 2388504, at *7 (W.D.N.Y. Mar. 7, 2023) (same), *appeal withdrawn*, No. 23-504, 2023 WL 6459811 (2d Cir. Aug. 1, 2023); *Moulds v. Skillcycle, Inc.*, Civil Action No. 23-4873, 2024 WL 2206464, at *1 n.1 (E.D. Pa. Mar. 27, 2024) (same); *Cornelius v. CVS Pharmacy, Inc.*, No. Civ. Action No. 23-01858 (SDW) (AME), 2023 WL 6876925, at *3-4 (D.N.J. Oct. 18, 2023) (same), *aff'd in part on other grounds, vacated on other grounds, remanded*, No. 23-2961, 2025 WL 980309 (3d Cir. Apr. 2, 2025).

4

B.    <u>**Sexual Harassment Is a Distinct Subcategory of Gender Discrimination Under the NYCHRL.**</u>

Owens seizes on the conflation of sexual harassment and gender discrimination under the NYCHRL in pre-EFASASHA decisions. Opp. at 9-11. She overextends those cases and misapprehends the NYCHRL.

In *Singh I*, the Court recognized that "not all gender discrimination is sexual harassment," notwithstanding the "less well" standard applicable under the NYCHRL. 2024 WL 3904799, at *6. Owens's cases also acknowledge that sexual harassment is just "*one species* of sex- or gender-based discrimination" under the NYCHRL. *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 75 (1st Dep't 2009) (emphasis added); *Diaz-Roa*, 2024 WL 4866450, at *22 ("It also is reasonable to believe that, under New York City law, sexual harassment is distinguished from discrimination on the basis of sex more generally . . . ."); *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 669 (2020) ("'Sexual harassment' is conceptually distinct from sex discrimination[.]"); *accord* "Sexual Harassment," Black's Law Dictionary (11th ed. 2019) (defined as "[a] *type of employment discrimination* consisting in verbal or physical abuse of a sexual nature, including lewd remarks, salacious looks, and unwelcome touching" (emphasis added)).

As noted in *Singh I*, "several" NYCHRL provisions distinguish sexual harassment from gender discrimination. 2024 WL 3904799, at *4 (citing N.Y.C. Admin. Code §§ 8-107(29)(b), 8-107(30)(b)(1), 8-132(a)(1)(a)). The New York City Commission on Human Rights training, guidance, and posters, the Court observed, define sexual harassment as a "*form* of gender-based discrimination." *Id.* at *5 (emphasis added); *see also Stop Sexual Harassment Notice*, NEW YORK CITY COMMISSION ON HUMAN RIGHTS, https://www.nyc.gov/assets/cchr/downloads/pdf/materials/SexHarass_Notice8.5x14-English.pdf (last visited Mar. 30, 2025).

The NYCHRL disparate treatment cases Owens cites reinforce PwC's argument. None even considered the consequences of conflating sexual harassment with gender discrimination under EFASASHA. *See* Opp. at 12 n.10 (collecting cases). Before EFASASHA, there was no consequence to conflating them because the NYCHRL equally proscribes *all* gender discrimination, including sexual harassment. *Singh I*, 2024 WL 3904799, at *4. Most tellingly, the plaintiffs in those cases pleaded they were fired, transferred, received a poor performance evaluation, and experienced an office reassignment, respectively. Opp. at 12 n.10. Accepting Owens's argument requires the Court to conclude that those plaintiffs "alleg[ed] conduct constituting . . . a sexual harassment dispute." 9 U.S.C. § 402(a). That is not what Congress provided for in EFASASHA.

The lone court invalidating an arbitration agreement because of an NYCHRL gender discrimination dispute is *Ding v. Structure Therapeutics, Inc.*, an out-of-circuit decision. No. 24-CV-01368-JSC, 2025 WL 405699, at *2 (N.D. Cal. Feb. 5, 2025). But *Ding* (like Owens) ignores that a plaintiff may plead they were treated "less well" *in different ways*, not all "less-well" treatment constitutes sexual harassment, and Congress only included sexual harassment claims in EFASASHA. That court also referenced the Commission's materials but ignored that those materials expressly identify sexual harassment as a subset of gender discrimination.[4]

Accordingly, Owens cannot invalidate her arbitral commitment based on a gender discrimination claim. And as set forth below, she has not pleaded a plausible sexual harassment claim.

---

[4] *See supra* p. 5 (citing the Commission's notice); *Stop Sexual Harassment Act*, NYC COMMISSION ON HUMAN RIGHTS, https://www.nyc.gov/site/cchr/law/sexual-harassment-training-main.page (last visited Mar. 30, 2025) ("[D]iscrimination based on gender . . . *includes* sexual harassment in the workplace . . . ." (emphasis added)).

C.    **Owens Did Not Plead Plausible, Gender-Based Harassment.**

Owens failed to plead a plausible sexual harassment claim under the NYCHRL (or any other statute). A necessary predicate to any plausible sexual harassment claim is that the plaintiff experienced harassment *because* of her sex. Owens, however, failed to allege that any Partner-Owner plausibly engaged in any conduct towards her *because* of her sex. *See* Mov. at 15-18.

Owens's claims overwhelmingly relate to economic aspects of her relationship with PwC—disputes over revenue credit, business leads, and account coverage. *See* Mov. at 10, 14-15. Her allegations regarding one Partner-Owner's supposed sexual harassment in July and August 2023 are facially neutral, no matter which party recites them. *Compare* Mov. at 15-16, *with* Opp. at 12; *see also Diaz-Roa*, 2024 WL 4866450, at *30 (finding that law-firm owner comparing plaintiff to a piece of steak and sliding behind her on a scooter did *not* establish plausible gender animus because there was no "basis for inferring that these gender-neutral incidents were in fact sex-motivated"). Owens ignores PwC's argument that her use of conclusory labels such as "discriminatory" and "denigrating" is insufficient. *See* Mov. at 18 (collecting cases). Accordingly, her Amended Complaint fails to plead a sexual harassment claim even when measured against her own EFASASHA cases. *Compare* Mov. at 16 (distinguishing the allegations in *Johnson* and *Delo*); *Diaz-Roa*, 2024 WL 4866450, at *22 (finding other allegations *did* state plausible sexual harassment claim, including that owners encouraged plaintiff to flirt with clients, use her appearance to attract business, and become romantically involved with others, and one owner fixated on plaintiff's appearance); *Brazzano v. Thompson Hine LLP et al.*, No. 24-CV-01420 (ALC)(KHP), 2025 WL 963114, at *7 (S.D.N.Y. Mar. 31, 2025) (ruling plaintiff stated plausible sexual harassment claim where lawyer allegedly made "lewd" comment that "judges know lawyers who provide legal services are working on a pro bono basis, and it's like getting jerked off by a judge"); *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 453 (S.D.N.Y. 2024) (holding claim of

sexual harassment was plausible where plaintiff was subjected to weekly degrading comments and insults, including being called "a single woman," an "old woman," and an "old Asian woman with no kids," and Head of People asked plaintiff whether she got breast cancer because her "breasts were so large" and whether she "even still menstruate[s]"), *reconsideration denied*, No. 23-CV-2879 (VEC), 2024 WL 1160643 (S.D.N.Y. Mar. 18, 2024).

Owens's allegations concerning one Partner-Owner's supposed "differential treatment" do not raise an inference of gender animus. *See* Opp. at 13-14. *All* of her inapposite authorities only recognize that evidence of differential treatment raises an inference of bias for a prima facie case of gender *discrimination*, and not specifically in sexual harassment cases. *Id.* (collecting gender discrimination, not sexual harassment, cases). Owens's "differential treatment" allegations fail in any event. Her pleading identifies neither instances of the lone Partner-Owner she accuses of sexual harassment treating men favorably nor any male comparators he supposedly treated favorably. AC ¶¶ 75-88. At most, Owens *does* "rely on the bare 'allegation that male employees were not subject to the harassment.'" Opp. at 14 n.12 (citation omitted). She actually relies on even less than that, however. She alleges only that she "never saw [him] treat men" like he treated her, AC ¶ 76, which is identical to allegations rejected in prior cases, *see* Mov. at 18-19 (collecting cases); *see also Sutter v. DiBello*, No. 18 Civ. 817 (ADS) (AKT), 2019 WL 4195303, at *21 (E.D.N.Y. Aug. 12, 2019) (dismissing NYCHRL harassment claim because plaintiff's "attempt to connect the [d]efendants' actions to [p]laintiff's sex or race is inherently conclusory" where she only alleged "non-white females" were not subject to comparable scrutiny, false imprisonment, denial of requests, and administrative charges of misconduct), *report and recommendation*

*adopted*, No. 2:18-cv-00817 (ADS) (AKT), 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019).[5]

Owens's "information and belief" allegations about other women are equally conclusory. AC ¶ 77. She alleges other female Partner-Owners believed his conduct was "discriminatory." *Id.* She alleges one refused to work alone with him because of his "behavior." *Id.* And Owens alleges his conduct toward a female Director was "disrespectful and derogatory." *Id.* None of these allegations say what this Partner-Owner did to these women, let alone establish a nexus between his conduct and their sex. Owens's cases are therefore distinguishable. *Castagna v. Luceno*, 558 F. App'x 19, 21 (2d Cir. 2014) (finding fact issue precluded summary judgment where male supervisor "directed physical threats at three female employees" and had "extreme outbursts" at them that included "gender-explicit content," including use of a sex-based epithet "referring to other women as 'bitch[es]'" (alteration in original)); *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (same where plaintiffs' own affidavits showed perpetrator's retaliatory intent, and not because of evidence from other employees).

## D.    Owens's Retaliation Claim Is Beyond EFASASHA's Scope Too.

Owens's attempt to invoke EFSASHA because of her retaliation claim fails as well.

Owens alleges she expressed concerns to PwC about the conduct described in her Amended Complaint—conduct she now claims constitutes sexual harassment for EFASASHA-analysis purposes. AC ¶¶ 80-81. If the Court finds, as it should, that alleged conduct is not plausible sexual harassment sufficient to invoke EFASASHA, then any retaliation against her for internally raising

---

[5] Even in gender discrimination disputes, "[n]umerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims 'where the complaint was entirely devoid of any details regarding the purported comparators . . . .'" *Blige v. City Univ. of N. Y.*, No. 1:15-cv-08873 (GBD) (KHP), 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) (alteration in original) (citation omitted)), *report and recommendation adopted*, *Blige v. City of N.Y.*, No. 15 Civ. 08873 (GBD) (KHP), 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017); *e.g.*, *Mejia v. White Plains Self Storage Corp.*, No. 18-CV-12189 (KMK), 2020 WL 247995, at *5 (S.D.N.Y. Jan. 16, 2020) (granting motion to dismiss because plaintiff failed to identify comparators or allege how they were treated differently).

those same allegations should not find cover under EFSASHA either. *See* Mot. at 19-20.

Moreover, as Owens puts it, the Firm "retaliated against her for her protected complaints about *sex discrimination*." Opp. at 16 (emphasis added). Retaliation based on an alleged internal complaint of discrimination does not qualify as a "dispute *relating to conduct* that is alleged to constitute *sexual harassment*." 9 U.S.C. § 401(4) (emphases added). *Olivieri v. Stifel, Nicolaus & Co., Inc.*, only held that "retaliation resulting from a report of *sexual harassment*" is related to the underlying sexual harassment dispute for purposes of EFASASHA. 112 F.4th 74, 92 (2d Cir. 2024) (emphasis added).

Owens's argument that, in August 2023, she reasonably believed she was complaining about sexual harassment is irrelevant to the EFASASHA analysis. EFASASHA's operative provision requires Owens to allege "[1] *conduct* constituting a [2] sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added). Only by satisfying this threshold "conduct" requirement can she invalidate her pre-dispute arbitration agreement "with respect to a case" that relates to a sexual harassment dispute. *Id.* In the absence of alleged "conduct" that qualifies as sexual harassment (like here), a reasonable belief at the time of a subsequent complaint, standing alone, is insufficient. And the non-EFASASHA cases Owens cites do not consider this issue. *See* Opp. at 16-17 (citing *Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229 (S.D.N.Y. 2024), and *Alexander v. Possible Prods., Inc.*, 336 F. Supp. 3d 187 (S.D.N.Y. 2018)).

In addition, Owens's allegations do not support a finding that Owens reasonably believed she was complaining of illegal sexual harassment in any event. Her allegations largely concern economic disputes and provide no basis for her conclusion that she complained about "sexual harassment." *Supra* § II.C. By her own allegations, then, Owens's internal complaint *is* "categorically" excluded from the anti-discrimination laws. *See* Mov. at 18-19 (collecting cases);

*Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313, 313 n.11 (N.Y. 2004) (holding that plaintiff did not engage in protected activity where she "filed numerous grievances claiming generalized 'harassment,'" but none involved harassment "because of race").[6]

\* \* \*

This case does not involve any alleged conduct even remotely rising to the level of sexual harassment. The Court should grant PwC's motion because denying it would not combat "the growth of office cultures that ignore harassment and retaliate against those who report it, prevent future victims from being warned about dangerous companies and individuals, [or] create incentives for the corporate protection of rapists and other serial harassers.'" Opp. at 1 (quoting *Diaz-Roa*, 2024 WL 4866450, at \*16 n.11).

## III.    THE COURT CAN DETERMINE PWC DID NOT EMPLOY OWENS.

Owens nitpicks PwC's assertion that EFASASHA's option is limited to employment cases. Opp. at 8. But she does not dispute that *her* claims are governed by statutes that authorize suits only against employers. *Compare* Mov. at 21, *with* Opp. at 7-9. Accordingly, if PwC was not her employer, then her case is unrelated to any sexual harassment dispute under applicable law.

### A.    The Summary Judgment Standard Governs the Determination of the Parties' Relationship in this Context.

Owens does not dispute that the Second Circuit has applied the summary judgment standard to determine the nature of the parties' relationship for a motion to compel arbitration. *See* Mov. at 22 (collecting cases). She fails to distinguish those cases, instead citing *Watson v. Blaze*

---

[6] In the cases Owens cites, the alleged conduct *did* relate to the plaintiffs' protected characteristics. Their belief it was sex-based was therefore reasonable (unlike Owens's), and the only issue was whether the conduct was sufficiently egregious to be harassment. *See Moore*, 722 F. Supp. 3d at 255-56 (denying motion to dismiss retaliation claim even though racially insensitive emails did not create underlying hostile work environment because plaintiff reasonably believed they did); *Alexander*, 336 F. Supp. 3d at 194 (denying motion to dismiss retaliation claim regardless of whether reference to plaintiff on call sheet as "Alison Sexytime Double" would be "enough" to state underlying sexual harassment claim).

*Media LLC*, an out-of-circuit decision where the court specifically noted that the defendant did "not brief" the question regarding the proper standard and that the court "need not decide" which standard should apply. No. 3:23-CV-0279-B, 2023 WL 5004144, at *4 (N.D. Tex. Aug. 3, 2023).

The summary judgment standard should apply. Were it otherwise, the Court would be forced to characterize the parties' relationship by reference to Owens's conclusory allegations that she "really was an employee" and "was not truly an owner." AC ¶ 16. That is not the law according to her own authorities. Opp. at 18 (citing *Campbell v. Chadbourne & Parke LLP*, No. 16-CV-6832 (JPO), 2017 WL 2589389, at *3 (S.D.N.Y. June 14, 2017), and *Baskett v. Autonomous Rsch. LLP*, No. 17-CV-9237 (VSB), 2018 WL 4757962, at *6 (S.D.N.Y. Sept. 28, 2018)).

**B.** <u>**The Undisputed Facts Demonstrate that PwC Did Not Employ Owens.**</u>

All six *Clackamas* factors weigh in favor of finding PwC did not employ Owens. *See* Mov. at 22-29. As such, even if she had pleaded a plausible sexual harassment claim—and she did not— she cannot bring one under the laws protecting employees, and the Court should grant PwC's motion.

Specifically, Owens concedes that, unlike a PwC employee:

- She joined PwC by admission to the partnership pursuant to BAC vote. Reply SUMF ¶ 20.

- Redacted

   *Id.* ¶¶ 55-56, 58.

- She signed a limited liability partnership agreement and made a capital contribution in exchange for equity. *Id.* ¶¶ 18-19, 21. Her equity entitled her to share in the Firm's profits, and her capital contribution was at risk with respect to the Firm's

losses. *Id.* ¶¶ 13, 19. PwC reported her income on an IRS Form K-1, not W-2. *Id.* ¶ 13.

- She could self-nominate or be nominated to run for the Board and, if successful, she could sit on the BAC and PAC, ████Redacted████ ████████████████████████████████████████████ *Id.* ¶¶ 14, 23-24. She, in fact, nominated a Board candidate and provided feedback regarding three Board candidates and two internal Partner-Owner candidates. *Id.* ¶¶ 26-27.

- She could vote on anything submitted to the partnership for a vote, which included during her tenure a Senior Partner election, two Board elections, and a series of proposed amendments to the P&PA—some of which led to a major reorganization of the Firm and changes to Partner-Owners' ability to compete with the Firm after withdrawal. *Id.* ¶¶ 24-25.

- She had discretion to develop her credit card consulting practice, including leading client engagements upon first joining PwC, committing the firm to contracts, staffing her engagements with PwC employees, directing the performance of their work, using a business-development budget, and creating a sub-practice. *Id.* ¶¶ 17, 31-32, 41-44, 54.

- In Partner-Owner meetings, webcasts, Senior Partner updates, and on the Partner Portal, she had access to a substantial variety of Firm confidential information and updates. *Id.* ¶¶ 28-30.

These undisputed material facts require holding PwC was not her employer under *Clackamas*. *See* Mov. 21-29.

Considering Owens's significant discretion and participation in PwC's governance and

profits, her authorities are inapposite. *See E.E.O.C. v. Sidley Austin Brown & Wood*, 315 F.3d 696, 702 (7th Cir. 2002) (declining to resolve whether law firm employed partners but noting that "all power resides in a small, unelected committee" that functioned "like the self-perpetuating board of trustees of a private university"); *Simpson v. Ernst & Young*, 100 F.3d 436, 441 (6th Cir. 1996) (finding plaintiff was employee where the firm "was directed exclusively by a 10 to 14 member Management Committee and its chairman," and plaintiff could not participate in the admission of partners, vote for firm leadership, or participate in profits and losses); *Bowling v. Stamford Anesthesiology Servs., P.C.*, No. 3:17-CV-642(AWT), 2020 WL 4938185, at *2 (D. Conn. Aug. 24, 2020) (finding fact issue because plaintiff disputed defendant's proffer as to whether she had notice of shareholder meetings, could participate in certain decisions, and had access to confidential information); *Campbell v. Chadbourne & Parke LLP*, No. 16-CV-6832 (JPO), 2017 WL 2589389, at *3 (S.D.N.Y. June 14, 2017) (finding fact issue where plaintiffs actually disputed law firm's contention that they could participate in governance); *Rosenblatt v. Bivona & Cohen, P.C.*, 969 F. Supp. 207, 215 (S.D.N.Y. 1997) (applying pre-*Clackamas* case law to find *non-equity* partner in law firm was employee and solely because it was *undisputed* he was an employee at will).[7]

### C.    Owens's Declaration Creates No Genuine Issues of Material Fact.

In a futile attempt to create issues of material fact, Owens makes largely conclusory

---

[7] Even less persuasive are Owens's cases where senior employees with no ownership stake in the business improperly sought to rely on *Clackamas*. *See Smith v. Castaways Fam. Diner*, 453 F.3d 971, 983 (7th Cir. 2006) (holding *Clackamas* test did not even apply to "highly-placed employees," neither of whom "holds an ownership interest in [defendant] by virtue of being a shareholder or equity partner"); *Mann v. Est. of Meyers*, 61 F. Supp. 3d 508, 530 (D.N.J. 2014) (finding fact issue where one person (not plaintiff) had two-thirds control of car dealership, and plaintiff also reported to owner, profits were not distributed proportionally to plaintiff but instead he got year-end bonuses, he could not fire employees, and owner fired him); *Simms v. Ctr. for Corr. Health & Pol'y Stud.*, 794 F. Supp. 2d 173, 190 (D.D.C. 2011) (finding plaintiff was employee where she "could not influence the board," was "deemed an employee" at hiring, her bonus was denied, her work was evaluated monthly and the record was "silent as to whether [she] shared in the profits, liabilities, or losses").

assertions in a declaration about matters that have no bearing on the question before the Court.[8]

She avers that she lacked "complete autonomy" in running her practice. Reply SUMF ¶ 38. No member of any partnership enjoys complete autonomy, however. Only sole proprietors do. If "complete autonomy" were the test, no party to a partnership agreement would ever be a business owner. And that is not the law. *See* Mot. at 23-29 (collecting cases). Moreover, given the nature of PwC's business—including audit work for public companies—complete autonomy is impossible. The Firm is subject to regulatory requirements. Supplemental Declaration of Stephen Hamilton ¶ 5. For example, auditor-independence standards and regulations require the Firm to maintain independence with respect to certain clients. *Id.* To do that, the Firm provides an outline of the key independence-related steps for engagement teams seeking to perform non-audit services for restricted clients. *Id.* That Owens had to confer before taking on some of these new consulting clients and was subject to certain risk controls in no way suggests that PwC "supervise[d]" her work. *Clackamas*, 538 U.S. at 449-50.

Owens's other testimony equally fails to raise a material issue of fact. She contends PwC "fired" her but elsewhere admits her withdrawal occurred pursuant to the process set forth in the P&PAs. Reply SUMF ¶¶ 33, 55. She argues she did not serve on PwC's Board while admitting she could have. *Id.* ¶ 23. She claims in conclusory fashion that her work was subject to "oversight" by colleague Partner-Owners but gives no examples of other Partner-Owners *requiring* her to submit client deliverables for internal review (as opposed to collaborating on them). *Id.* ¶ 70. She falsely equates employee bonuses and Partner-Owner profit-sharing even though all payments PwC makes to employees, vendors, contractors, and other parties originate from its revenues, and those

---

[8] There is no genuine dispute here, but if the Court concludes otherwise, the parties should proceed summarily to a bench trial pursuant to Section 4 of the FAA. *See* Mot. at 22 n.7.

parties are not entitled to share in PwC's profits. *Id.* ¶¶ 13, 78-79. She compares her own shares to other, more successful Partner-Owners, but nothing in *Clackamas* suggests that the absence of perfect equality of ownership makes her an employee. *Id.* ¶ 23. Finally, she attempts to wave away the undisputed facts that she had "significant responsibilities and autonomy in her work" and was "privy to confidential information" based on her experiences as an employee at other companies, as if that somehow negates those admissions or is relevant to the *Clackamas* factors. *Id.* ¶¶ 28, 35, 42-54.

None of Owens's conclusory assertions or red herrings create genuine issues of material fact. Accordingly, even if the Court finds that she plausibly pleaded a sexual harassment dispute (and she did not), it should hold that PwC was not her employer and hold her to her agreement to arbitrate her claims.

**IV.    <u>CONCLUSION</u>**

For the foregoing reasons, PwC respectfully requests that the Court grant PwC's motion to compel arbitration.

Dated: New York, New York                    Respectfully Submitted
      April 4, 2025


                                                        PAUL HASTINGS LLP

                                                        By: _____
                                                        Kenneth W. Gage, Esq.
                                                        Daniel S. Richards, Esq.
                                                        200 Park Avenue
                                                        New York, New York 10166
                                                        Phone: (212) 318-6000
                                                        Fax: (212) 230-7646
                                                        kennethgage@paulhastings.com
                                                        danrichards@paulhastings.com

                                                        *Attorneys for Defendants*
                                                        PricewaterhouseCoopers LLP,
                                                        PricewaterhouseCoopers Advisory Services LLC,
                                                        PwC USA LLP, PwC US Group LLP, and PwC
                                                        US Consulting LLP

## <u>LOCAL CIVIL RULE 7.1(c) CERTIFICATION</u>

The undersigned, counsel of record for Defendants PricewaterhouseCoopers LLP, PricewaterhouseCoopers Advisory Services LLC, PwC USA LLP, PwC US Group LLP, and PwC US Consulting LLP, hereby certifies that this brief contains 4,997 words, which complies with the word limit set forth in Local Civil Rule 7.1(c) and the Court's Order expanding the word limit. *See* ECF 69.

Kenneth W. Gage