UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

NINA OWENS,

                Plaintiff,

    - against -

PRICEWATERHOUSECOOPERS LLC, PRICEWA-
TERHOUSECOOPERS ADVISORY SERVICES LLC,
PWC USA LLP, PWC US GROUP LLP, and PWC US
CONSULTING LLP,

                Defendants.

No. 1:24-cv-05517 (GHW)

----------------------------------------X

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF HER MOTION TO STAY ARBITRATION

VLADECK, RASKIN & CLARK P.C.
111 Broadway, Suite 1505
New York, New York 10006
(212) 403-7300

Of Counsel:
    Anne L. Clark
    Emily Bass

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................................... 1

ARGUMENT ............................................................................................................................................ 1

I.      This Court Has the Authority to Stay PwC's Arbitration ..................................................... 1

          A.   Federal Courts Have Broad Remedial Authority to Stay Arbitrations ......................... 1

          B.   The Court Has Supplemental Jurisdiction over the AAA Claims ................................ 3

          C.   The Rules Enabling Act ................................................................................................... 4

II.     The AAA Claims Are Not Subject to Mandatory Arbitration ............................................ 5

CONCLUSION ....................................................................................................................................... 10

TABLE OF AUTHORITIES

Page(s)

**Cases**

ADT, L.L.C. v. Richmond,
  18 F.4th 149 (5th Cir. 2021) .................................................................................................4

Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp.,
  589 F.2d 1214 (3d Cir. 1978) ................................................................................................2

Brown & Brown, Inc. v. Johnson,
  25 N.Y.3d 364 (2015) .........................................................................................................5, 6

Bullard v. Drug Pol'y All.,
  No. 18 CIV. 8081 (KPF), 2019 WL 7291226 (S.D.N.Y. Dec. 30, 2019) ...............................4

Burgos v. Ne. Logistics Inc.,
  No. 15CV6840CBACLP, 2016 WL 899264 (E.D.N.Y. Mar. 2, 2016) ...................................2

Calloway on Behalf of LMN Prods., Inc. v. Marvel Ent. Grp., A Div. of Cadence
  Indus. Corp.,
  564 F. Supp. 107 (S.D.N.Y. 1983) .........................................................................................2

Cantor Fitzgerald, L.P. v. Ainslie,
  312 A.3d 674 (Del. 2024) ...................................................................................................6, 7

Carlson v. Raymour & Flanigan Furniture Co.,
  No. 10-CV-455A, 2011 WL 1454068 (W.D.N.Y. Mar. 24, 2011) ..........................................3

Clay v. FGO Logistics, Inc.,
  751 F. Supp. 3d 3 (D. Conn. 2024) ........................................................................................3

Cray v. Nationwide Mut. Ins. Co.,
  136 F. Supp. 2d 171 (W.D.N.Y. 2001) ...................................................................................8

Credit Suisse AG v. Graham,
  533 F. Supp. 3d 122 (S.D.N.Y. 2021) ....................................................................................2

Cumberland Farms, Inc. v. Lexico Enters., Inc.,
  No. 10-CV-4658 (ADS)(AKT), 2012 WL 526716 (E.D.N.Y. Feb. 16, 2012) ........................9

Davis v. Marshall & Sterling, Inc.,
  217 A.D.3d 1073 (2023) ........................................................................................................8

Delaware Exp. Shuttle, Inc. v. Older,
  No. CIV.A. 19596, 2002 WL 31458243 (Del. Ch. Oct. 23, 2002) .........................................7

Deshaw v. Lord & Taylor, Div. of May Dep't Stores Co.,
   No. 90 CIV. 0490 (JFK), 1991 WL 107271 (S.D.N.Y. June 13, 1991) ................................... 8

Diaz-Roa v. Hermes L., P.C.,
   No. 24-CV-2105 (LJL), 2024 WL 4866450 (S.D.N.Y. Nov. 21, 2024) ........................... 1, 5, 9

Eastman Kodak Co. v. Carmosino,
   77 A.D.3d 1434 (2010) ......................................................................................................... 7

FUJIFILM N. Am. Corp. v. Geleshmall Enters. LLC,
   239 F. Supp. 3d 640 (E.D.N.Y. 2017) .................................................................................. 9

Ginsberg v. Valhalla Anesthesia Assocs., P.C.,
   971 F. Supp. 144 (S.D.N.Y. 1997) ....................................................................................... 9

Healy v. Pavarini Constr. Co. (SE), Inc.,
   No. 06-20663-CIV, 2006 WL 8433546 (S.D. Fla. July 20, 2006) ........................................ 8

Hunt, Gather LLC v. Andreasik,
   No. 1:23-CV-627-RP, 2023 WL 4853400 (W.D. Tex. July 27, 2023) .................................. 9

INTL FCStone Fin., Inc. v. Jacobson,
   No. 19 C 1438, 2019 WL 2356989 (N.D. Ill. June 4, 2019) ................................................. 3

Johnson v. Everyrealm, Inc.,
   657 F. Supp. 3d 535 (S.D.N.Y. 2023) .................................................................................. 5

Jones v. Ford Motor Credit Co.,
   358 F.3d 205 (2d Cir. 2004) ................................................................................................. 9

Kelley-Hilton v. Sterling Infosystems Inc.,
   426 F. Supp. 3d 49 (S.D.N.Y. 2019) ................................................................................ 7, 8

Labyrinth, Inc. v. Urich,
   No. 2023-0327-MTZ, 2024 WL 295996 (Del. Ch. Jan. 26, 2024) ........................................ 7

Locus Techs. v. Honeywell Int'l Inc.,
   632 F. Supp. 3d 341 (S.D.N.Y. 2022) .................................................................................. 6

Lyons Ins. Agency, Inc. v. Wark,
   No. CV 2017-0348-SG, 2020 WL 429114 (Del. Ch. Jan. 28, 2020) .................................... 6

Madden v. Midland Funding, LLC,
   237 F. Supp. 3d 130 (S.D.N.Y. 2017) .................................................................................. 6

McGuire v. Town of Stratford,
   No. 3:14-CV-1471 (SRU), 2016 WL 3172725 (D. Conn. June 6, 2016) ............................. 4

Medicrea USA, Inc. v. K2M Spine, Inc.,
   No. 17 CIV. 8677 (AT), 2018 WL 3407702 (S.D.N.Y. Feb. 7, 2018) ...................................5

Mera v. SA Hospitality Grp.,
   LLC, 675 F. Supp. 3d 442 (S.D.N.Y. 2023) ......................................................................5

Philadelphia Indem. Ins. Co. v. Olympia Early Learning Ctr.,
   No. 3:12-CV-05759-DGE, 2022 WL 17176857 (W.D. Wash. Nov. 23, 2022) ........................3

Pollard v. Autotote, Ltd.,
   852 F.2d 67 (3d Cir.) ..........................................................................................................7

Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co.,
   698 F. Supp. 504 (S.D.N.Y. 1988) ......................................................................................3

Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   48 N.Y.2d 84 (1979) ...........................................................................................................8

Puris v. TikTok, Inc., et al.,
   No. 24CV944 (DLC), 2025 WL 343905 (S.D.N.Y. Jan. 30, 2025) .......................................5

SD Prot., Inc. v. Del Rio,
   498 F. Supp. 2d 576 (E.D.N.Y. 2007) .................................................................................6

Sheng Jian Lin v. Kobe Grill, Corp.,
   No. 3:16-CV-184(AWT), 2016 WL 9307135 (D. Conn. Aug. 17, 2016) ..............................4

Stewart v. Lamar Advert. of Penn LLC,
   No. CIV.A. 03-2690, 2004 WL 90078 (E.D. Pa. Jan. 14, 2004) ..........................................8

Stream TV Networks, Inc. v. SeeCubic, Inc.,
   279 A.3d 323 (Del. 2022) ...................................................................................................6

Torres v. Gristede's Operating Corp.,
   628 F. Supp. 2d 447 (S.D.N.Y. 2008) .................................................................................8

Vaden v. Discover Bank,
   556 U.S. 49 (2009) ..............................................................................................................3

Xerox Corp. v. Lantronix, Inc.,
   342 F. Supp. 3d 362 (W.D.N.Y. 2018) ................................................................................9

**Statutes**

28 U.S.C. § 1367..................................................................................................................4

Ending Forced Arbitration in Sexual Assault and Sexual Harassment Act of 2021,
  9 U.S.C. § 401 et seq................................................................................................ passim

Rules Enabling Act, 28 U.S.C. § 2072 .......................................................................................4

**Court Rules**

Federal Rule of Civil Procedure 13 ..................................................................................... passim

v

PRELIMINARY STATEMENT

Plaintiff Nina Owens ("plaintiff" or "Owens") respectfully submits this Reply Memorandum of Law in further support of her Motion to Stay the Arbitration brought by defendants PricewaterhouseCoopers LLC, PricewaterhouseCoopers Advisory Services LLC, PwC US LLP, PwC US Group LLC, and PWC US Consulting LLP (collectively, "defendants," "PwC" or "the Firm").

As set forth in further detail in her opening Memorandum of Law in support of her Motion to Stay (Dkt. 39) ("Pl. Br."), the Court has broad remedial authority to issue a stay of the claims PwC filed with the American Arbitration Association against Owens ("AAA Claims"), and this authority should be exercised given the significant overlap between the AAA Claims and Owens's sexual harassment claims that are exempt from mandatory arbitration under the Ending Forced Arbitration in Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. § 401 et seq. ("EFAA"). Defendants in their opposition Memorandum of Law (Dkt. 66) ("Def. Br.") seek to limit artificially this Court's authority to stay an arbitration concerning related claims and, disregarding the weight of authority in this Circuit, attempt to "carve up" the claims at issue in this case. Diaz-Roa v. Hermes L., P.C., No. 24-CV-2105 (LJL), 2024 WL 4866450, at *13 n.9 (S.D.N.Y. Nov. 21, 2024). Defendants' arguments should be rejected and a stay granted.

ARGUMENT

I.  This Court Has the Authority to Stay PwC's Arbitration

    A. Federal Courts Have Broad Remedial Authority to Stay Arbitrations

Defendants falsely claim that "the parties agree that there is nothing the Court can do right now." (Def. Br. 5) To the contrary, plaintiff's request – as is apparent from the face of her motion – is that the Court stay PwC's arbitration against Owens under its remedial powers. (See Pl. Br. 8-9, 17) Defendants have not (and cannot) cite any authority that the Court lacks authority to stay

1

PwC's arbitration and, tellingly, fail to distinguish the ample authority plaintiff cited that confirms that this Court may issue such a stay. (See Pl. Br. 8-9, 17)

Instead, defendants engage in procedural sleight of hand, reframing plaintiff's request as premature under Federal Rule of Civil Procedure 13(a). Although Fed. R. Civ. P. 13 supports the issuance of a stay here (see Pl. Br. 15-16), plaintiff does not, and need not, rely on it in exclusively in support of her argument for a stay, because the authority to stay an arbitration stems broadly from the Court's broad remedial powers irrespective of the "jurisdictional hook" for the Court's actions. See Credit Suisse AG v. Graham, 533 F. Supp. 3d 122, 128 n.2 (S.D.N.Y. 2021); Burgos v. Ne. Logistics Inc., No. 15CV6840CBACLP, 2016 WL 899264, at *2 (E.D.N.Y. Mar. 2, 2016) (where determination of motion to compel arbitration of claims filed in Court "logically precede[s] the initiation of arbitration proceedings . . . . [i]t would only make sense [] that the Court is empowered to issue a temporary stay [of the arbitration]");[1] see also Pl. Br. 8-9.[2]

Further, the substantial overlap of factual and legal questions at issue in this action renders the AAA claims not only compulsory counterclaims under Fed. R. Civ. P. 13 (see Pl. Br. 15-16) but, more importantly, means the claims are simply not subject to mandatory arbitration under the EFAA. (see Pl. Br. 12-15; infra pp. 5-9)

The cases that defendants cite (Def. Br. 6) to support their argument that compulsory counterclaims may be brought in subsequent arbitrations do not require a different result.[3] None

---

[1] Notably, PwC did not file the AAA claims until September 5, 2025, the same day it filed a letter seeking to move to compel plaintiff's discrimination claims to arbitration. (Dkt. 18)

[2] In none of plaintiff's cases (see Pl. Br. 8-9, 17) do the Courts derive the authority to stay a separate action from Fed. R. Civ. P. 13.

[3] See Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp., 589 F.2d 1214, 1221 (3d Cir. 1978) (compulsory counterclaim may be brought in subsequent arbitration where claim is "otherwise arbitrable"); Calloway on Behalf of LMN Prods., Inc. v. Marvel Ent. Grp., A Div. of Cadence Indus. Corp., 564 F. Supp. 107, 108 (S.D.N.Y. 1983) (arbitrable copyright dispute);

2

of those cases—each of which predate the EFAA by many decades—involves claims that are subject to the EFAA, which Congress explicitly intended "to override—in the sexual harassment context—the FAA's background principle that, in cases involving both arbitrable and non-arbitral claims, the former must be sent to arbitration even if this will lead to piecemeal litigation.'" Clay v. FGO Logistics, Inc., 751 F. Supp. 3d 3, 20 (D. Conn. 2024). The AAA claims, on the other hand, are subject to the EFAA and therefore not arbitrable to begin with. (See Pl. Br. 12-15)[4]

    B.  The Court Has Supplemental Jurisdiction over the AAA Claims

Defendant's throwaway argument that the Court lacks subject matter jurisdiction over the AAA claims (Def. Br. 13) fares no better.

While defendants are of course correct that this court must have subject matter jurisdiction to stay the arbitration (Def. Br. 13), it is beyond question that jurisdiction can be established pursuant to supplemental jurisdiction. Carlson v. Raymour & Flanigan Furniture Co., No. 10-CV-455A, 2011 WL 1454068, at *5 (W.D.N.Y. Mar. 24, 2011) (noting that courts may exercise jurisdiction to compel an arbitration under any of the three mechanisms for establishing jurisdiction – federal question, diversity, and supplemental jurisdiction); INTL FCStone Fin., Inc. v. Jacobson, No. 19 C 1438, 2019 WL 2356989, at *3 (N.D. Ill. June 4, 2019) (same). And because, under Vaden v. Discover Bank, 556 U.S. 49, 62–65 (2009) (Def. Br. 13) and its progeny, Courts

---

Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co., 698 F. Supp. 504, 519 (S.D.N.Y. 1988) (compelling arbitration of arbitrable claims).

[4] Even if plaintiff were seeking an advisory ruling under Fed. R. Civ. P. 13 rather than a stay—which she is not—the Court could issue such a ruling. Contrary to defendants' baseless assertion that this Court lacks the authority at this stage to determine whether the AAA claims are compulsory (Def. Br. 5), at least one Court has found to the contrary. See Philadelphia Indem. Ins. Co. v. Olympia Early Learning Ctr., No. 3:12-CV-05759-DGE, 2022 WL 17176857, at *1 (W.D. Wash. Nov. 23, 2022) (holding that Court could conclude that defendants' potential counterclaims, which were at that point pled only as affirmative defenses, were compulsory counterclaims and granting sua sponte leave to defendants to amend their pleading to assert the counterclaims).

3

look to the "whole controversy" between the parties to determine the existence of jurisdiction ADT, L.L.C. v. Richmond, 18 F.4th 149, 151 (5th Cir. 2021), the Court must not consider the question of whether it would have jurisdiction over the AAA claims in a vacuum, but rather whether jurisdiction over the AAA claims would be appropriate in the context of the instant case.

As should be self-evident from plaintiff's opening brief (Pl. Br. 12-16),[5] the AAA claims form part of the same case or controversy as Owens's discrimination claims such that supplemental jurisdiction should be exercised. See 28 U.S.C. § 1367; Bullard v. Drug Pol'y All., No. 18 CIV. 8081 (KPF), 2019 WL 7291226, at *8 (S.D.N.Y. Dec. 30, 2019) (fraud and breach of fiduciary duty counterclaims brought by employer were "plainly related to" and "intertwined" with employee's discrimination claims such that supplemental jurisdiction was appropriate); McGuire v. Town of Stratford, No. 3:14-CV-1471 (SRU), 2016 WL 3172725, at *1 (D. Conn. June 6, 2016) (denying motion for reconsideration, finding supplemental jurisdiction over employer's counterclaims against employee in discrimination case appropriate).

C. The Rules Enabling Act

Nor can defendants subvert the protections of the EFAA by appealing to the Rules Enabling Act. Importantly, the Rules Enabling Act applies only to the Federal Rules of Civil Procedure and not to the EFAA. See 28 U.S.C. § 2072 (empowering Congress to enact rules of practice and procedure). Even if the Rules Enabling Act applied here—which it does not—defendants cannot avail themselves of it as they do not have a "substantive" right to arbitrate claims that are subject to the EFAA. (Pl. Br. 15)

---

[5] That the AAA claims are compulsory counterclaims—which they are (Pl. Br. 15-16) —is sufficient but not necessary for the Court to exercise supplemental jurisdiction. Sheng Jian Lin v. Kobe Grill, Corp., No. 3:16-CV-184(AWT), 2016 WL 9307135, at *2 (D. Conn. Aug. 17, 2016).

4

II. The AAA Claims Are Not Subject to Mandatory Arbitration

Because the AAA Claims "relate to" Owens's claims of gender-based harassment, PwC cannot force Owens to fight them in a separate, secret arbitration. See Puris v. TikTok, Inc., et al., No. 24CV944 (DLC), 2025 WL 343905, at *5 (S.D.N.Y. Jan. 30, 2025) Diaz-Roa, 2024 WL 4866450, at *13 n.9 (rejecting the argument that "the EFAA can invalidate the arbitration agreement only as to the claims related to the sexual assault or sexual harassment dispute").[6]

As PwC no doubt concedes in light of the extensive briefing on this very issue, whether Owens was an employee is central to the resolution of her discrimination claims. Likewise, if a factfinder determines that Owens is an employee—which she is—that will invariably affect the analysis of the AAA claims. Similarly, the AAA claims relate to Owens's discrimination claims because both will require a factfinder to determine the cause of Owens's dismissal.

As a threshold matter, defendants contend that Delaware, and not New York, law applies to the AAA claims under the choice of law provision in the P&PA. (Def. Br. 11-12) New York Courts do not automatically enforce a choice-of-law provision contained in an agreement, including where effectuating the choice-of-law provision would violate a public policy of New York State. Medicrea USA, Inc. v. K2M Spine, Inc., No. 17 CIV. 8677 (AT), 2018 WL 3407702, at *8 (S.D.N.Y. Feb. 7, 2018); Brown & Brown, Inc. v. Johnson, 25 N.Y.3d 364, 368 (2015) (internal citations omitted) ("[C]ourts will not enforce agreements . . . where the chosen law

---

[6] Defendants cite no authority to support their argument that counterclaims are not part of the "entire case" under the EFAA, which seeks directly to subvert the intent of that law. Johnson v. Everyrealm, Inc., 657 F. Supp. 3d 535, 561 (S.D.N.Y. 2023) ("Congress's choice to amend the FAA directly with text broadly blocking enforcement of an arbitration clause with respect to an entire 'case' 'relating to' a sexual harassment dispute reflects its rejection—in this context—of the FAA norm of allowing individual claims in a lawsuit to be parceled out to arbitrators or courts depending on each claim's arbitrability."). And Mera v. SA Hospitality Grp., LLC, 675 F. Supp. 3d 442, 447–48 (S.D.N.Y. 2023) (Def. Br. 15) does not involve counterclaims and, in any event, is "antithetical to the language of the EFAA and its protective intent." Diaz-Roa, 2024 WL 4866450, at *13 n.9 (rejecting the holding in Mera).

violates some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal."). To the extent that Delaware law is held to be less protective of Owens as an employee based in New York state than New York state law, the provision would be unenforceable given New York's "'general public policy favoring robust and uninhibited competition,' and 'powerful considerations of public policy which militate against sanctioning the loss of [an employee's] livelihood.'" SD Prot., Inc. v. Del Rio, 498 F. Supp. 2d 576, 586 (E.D.N.Y. 2007); see Brown & Brown, Inc., 25 N.Y.3d 364, 370 (2015) (declining to apply Florida law concerning non-solicitation obligation notwithstanding parties' agreement to Florida choice-of-law provision where Florida law less protective of employee than New York law); Madden v. Midland Funding, LLC, 237 F. Supp. 3d 130, 147–48 (S.D.N.Y. 2017) (declining to apply Delaware choice-of-law provision where it would violate a fundamental public policy of New York).[7] However, it is unnecessary at this juncture to resolve the choice-of-law issue, because under Delaware law, as under New York law (see Pl. Br. 13-15) resolution of the AAA claims will require consideration of many of the same issues as resolution of Owens's discrimination claims.

Under Delaware law, restrictive covenants against employees are only enforceable where they are reasonable, because such policies could "effectively deprive [the employee of her] livelihood." Cantor Fitzgerald, L.P. v. Ainslie, 312 A.3d 674, 691 (Del. 2024); Lyons Ins. Agency, Inc. v. Wark, No. CV 2017-0348-SG, 2020 WL 429114, at *1 (Del. Ch. Jan. 28, 2020) (finding liquidated damages provision unenforceable where it imposed an "unreasonable restraints on competition, and on ex-employees' interests in earning a living."). When a company seeks to

---

[7] Neither of defendants' cases involved the public policy considerations at issue here and are thus inapposite. Locus Techs. v. Honeywell Int'l Inc., 632 F. Supp. 3d 341, 367 (S.D.N.Y. 2022) (choice-of-law provision agreed to between corporate parties where neither party raised public policy concerns); Stream TV Networks, Inc. v. SeeCubic, Inc., 279 A.3d 323, 355 n. 182 (Del. 2022) (contract dispute between corporate parties not implicating choice-of-law questions).

6

enforce such policies against their former owners, on the other hand, the "policy interest" that necessitates scrutiny for reasonable are "diminished." Cantor Fitzgerald, L.P., 312 A.3d at 687, 691 (declining to apply reasonableness analysis to former owner's non-competition restrictions). Accordingly, to determine the correct standard of analysis as to the AAA claims, a factfinder must, at the outset, determine if Owens was an employee.

Also, contrary to defendants' argument (Def. Br. 12), the reasons PwC fired Owens are relevant to the analysis of the AAA claims under Delaware law.[8] Delaware courts, like New York courts, disfavor restrictive covenants and thus, do not "mechanically" enforce or deny non-competes but "closely scrutinize[s] [them] as restrictive of trade." Labyrinth, Inc. v. Urich, No. 2023-0327-MTZ, 2024 WL 295996, at *23 (Del. Ch. Jan. 26, 2024). This analysis requires that a restrictive covenant will only be enforceable if it can "survive a balancing of the equities." Id. That PwC, and not Owens, chose to end the employment relationship (and why they did so), must be considered in any balancing of the equities here. See Pl. Br. 13[9]; Eastman Kodak Co. v. Carmosino,

---

[8] Defendants misrepresent the holding of Pollard v. Autotote, Ltd., 852 F.2d 67, 72 (3d Cir.), amended, 872 F.2d 1131 (3d Cir. 1988) (Def. Br. 12). The Pollard Courd did not hold that a restrictive covenant was enforceable against an employee fired without cause as defendants claim. Instead, the Court held that while the terms of the restrictive covenant applied to an employee fired without cause, the restrictive covenant was still subject to reasonableness analysis, which was not possible without further development of the record. Id. at 72. And Delaware Exp. Shuttle, Inc. v. Older, No. CIV.A. 19596, 2002 WL 31458243, at *3 (Del. Ch. Oct. 23, 2002) (Def. Br. 12) does not require a different result. There, the Court (as it was required to), considered the balance of equities and held that it did not matter, when considering the circumstances as a whole, whether employee who was forced out resigned before employer had the chance to fire him, id.; the Court did not hold, as defendants suggest (Def. Br. 12), that whether an employer has "cause" to fire an employee has no bearing on the enforceability of a post-employment restrictive covenant.

[9] The cases under New York law defendants cite recognize that whether an employee was terminated with or without cause is relevant to the enforceability of the restrictive covenants where an employer seeks to strip an employee of earned benefits. Kelley-Hilton v. Sterling Infosystems Inc., 426 F. Supp. 3d 49, 59 (S.D.N.Y. 2019) ("The law in New York is in fact that contractual forfeitures of postemployment benefits are per se enforceable for a violation of a restrictive covenant, unless the employee was terminated without cause, in which case the standard reasonableness analysis applies to any restrictive covenant."). But, in defendants' cases, the courts

7

77 A.D.3d 1434, 1436 (2010) (finding non-compete unenforceable based on "balance of equities" where employee fired without cause).

Because resolution of both Owens's discrimination claims and the AAA claims will necessarily involve resolution of overlapping factual questions—including whether Owens is an employee and why PwC fired her—PwC's insistence that the claims cover different "time periods" (Def. Br. 8-9, 15) similarly falls flat[10] and the cases it cites in support of this argument are inapposite.[11] And defendants' argument that the contractual provisions at issue do not overlap fares

---

declined to apply that analysis because, in those cases, the employee was not otherwise contractually entitled to those benefits. Kelley-Hilton, 426 F. Supp. 3d at 59 (finding irrelevant circumstances of termination where employee sought restricted stock options that were conditioned on non-compete); Davis v. Marshall & Sterling, Inc., 217 A.D.3d 1073, 1075 (2023), appeal dismissed, 40 N.Y.3d 1084, 226 N.E.3d 349 (2024) ("[employees] do not assert that defendant denied them access to any postemployment benefits that they are entitled to receive."). Here, on the other hand, PwC seeks, inter alia, repayment of plaintiff's earned wages from PwC in addition to payment of money her subsequent employer was paid. (See Declaration of Anne L. Clark dated February 7, 2024 (Dkt. 42) Exhibit A ¶ 26). Under these circumstances, Courts will not enforce a non-compete if the employee was discharged without cause. Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 48 N.Y.2d 84, 89 (1979) ("Where an employee is involuntarily discharged by his employer without cause and thereafter enters into competition with his former employer, and where the employer, based on such competition, would forfeit the pension benefits earned by his former employee, such a forfeiture is unreasonable as a matter of law and cannot stand."); Cray v. Nationwide Mut. Ins. Co., 136 F. Supp. 2d 171, 178 (W.D.N.Y. 2001) (noting that holding of Post extends to non-competes that would forfeit earned wages).

[10] In Healy v. Pavarini Constr. Co. (SE), Inc., No. 06-20663-CIV, 2006 WL 8433546, at *2 (S.D. Fla. July 20, 2006), which defendants cite for the undisputed proposition that, to be compulsory a counterclaim must involve overlapping underlying factual issues as the original claim (Def. Br. 9), the Court held that the counterclaims were "necessarily compulsory," where, as here, determination of both sets of claims would require an analysis of the same operative facts. Healy, 2006 WL 8433546, at *2. Accord Deshaw v. Lord & Taylor, Div. of May Dep't Stores Co., No. 90 CIV. 0490 (JFK), 1991 WL 107271, at *5 (S.D.N.Y. June 13, 1991) (Def. Br. 9-10) (counterclaims compulsory where both counterclaims and original claims required the factfinder to determine the reason for termination of plaintiff's employment).

[11] Stewart v. Lamar Advert. of Penn LLC, No. CIV.A. 03-2690, 2004 WL 90078, at *3 (E.D. Pa. Jan. 14, 2004) ("facts, evidence, and proof required" to resolve original claims "substantially differ from those needed to prove their counterclaims"); Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 467 (S.D.N.Y. 2008) ("only possible connection between Plaintiffs' overtime claims

8

no better. In deciding both sets of claims, the factfinder will need to look to the P&PA and the facts relating to the relationship between the parties to determine whether Owens is an employee.[12] Supra at 6-7; Pl. Br. at 14; see Xerox Corp. v. Lantronix, Inc., 342 F. Supp. 3d 362, 372 (W.D.N.Y. 2018) (finding compulsory counterclaims that "arise[] out of the same contract as that at issue in the complaint.")

---

and the counterclaims is that they arise out of the same employer-employee relationship."); Ginsberg v. Valhalla Anesthesia Assocs., P.C., 971 F. Supp. 144, 147 (S.D.N.Y. 1997) (fact of employment relationship without more is insufficient); FUJIFILM N. Am. Corp. v. Geleshmall Enters. LLC, 239 F. Supp. 3d 640, 645 (E.D.N.Y. 2017) (facts underpinning both sets of claims did not "substantially overlap"). In addition, defendants' cases on the connection between Owens's claims and the AAA claims (Def. Br. 8-10) exclusively consider the question under the more stringent analysis of Fed. R. Civ. P. 13(a) and not under the "expansive" language of the EFAA. Diaz-Roa, 2024 WL 4866450, at *13. See e.g., Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004) (considering only whether counterclaims are compulsory); Hunt, Gather LLC v. Andreasik, No. 1:23-CV-627-RP, 2023 WL 4853400, at *3 (W.D. Tex. July 27, 2023) (same). Because a stay would be appropriate under the EFAA even if PwC's counterclaims were not compulsory (which they are), these cases do not control the result.

[12] Accordingly, Cumberland Farms, Inc. v. Lexico Enters., Inc., No. 10-CV-4658 (ADS)(AKT), 2012 WL 526716, at *8 (E.D.N.Y. Feb. 16, 2012) (Def. Br. 13) is inapplicable. Cumberland Farms., 2012 WL 526716, at *8 (potential counterclaims not compulsory where claims involve different provisions than those at issue in original action).

9

CONCLUSION

For these reasons and for those set forth in plaintiff's opening brief, plaintiff's motion for a stay should be granted.

Dated: New York, New York
April 14, 2025

Respectfully submitted,

VLADECK, RASKIN & CLARK, P.C.

By:    */s/ Anne L. Clark*
      Anne L. Clark
      Emily Bass
      Attorneys for Plaintiff-Appellant
      111 Broadway, Suite 1505
      New York, NY 10006
      (212) 403-7300

<u>CERTIFICATE OF COMPLIANCE</u>

Anne L. Clark, attorney of record for plaintiff, hereby certifies that the foregoing brief complies with the requirements of Rule 7.1(c) of the Joint Local Rules, S.D.N.Y. and E.D.N.Y. The total number of words in the foregoing brief, based upon the word count of the word-processing system used to prepare the brief, is 3,442.

Dated: April 14, 2025

VLADECK, RASKIN & CLARK, P.C.

By: */s/ Anne L. Clark*

Anne L. Clark
111 Broadway, Suite 1505
New York, New York 10006
(212) 403-7300